

# The Attorney General of Texas

August 18, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lyndon L. Olson, Jr.
Chairman
State Board of Insurance
1110 San Jacinto Boulevard
Austin, Texas    78786

Opinion No.   JM-67

Re:    Whether    the    Texas
Catastrophe Property Insurance
Association is subject to the
Administrative Procedure Act

Dear Mr. Olson:

You have requested our opinion concerning specific provisions of
the Administrative Procedure and Texas Register Act (APTRA), article
6252-13(a), V.T.C.S., as they apply to the State Board of Insurance
(board) with respect to the Texas Catastrophe Property Insurance
Association (association) and its plan of operation (plan). The board
first approved this plan on May 14, 1971 and most recently approved it
with amendments on February 4, 1983.

The legislature enacted the Catastrophe Property Insurance Pool
Act (act), article 21.49 of the Insurance Code

> to provide a method whereby adequate windstorm,
> hail and fire insurance may be obtained in certain
> designated portions of the State of Texas.

V.T.C.S. art. 21.49, §1.   Section 4(a) of the act commands that the
association shall consist

> of all property insurers authorized to transact
> property insurance in this State, except those
> companies that are prevented by law from writing
> coverages   available   through   the   pool   on   a
> Statewide basis.

One of the duties of the association's initial board of directors is
to submit a proposed plan of operation to the board.  Section 5(d) of
the act requires that the plan

> shall set forth the number, qualifications, terms
> of office, and manner of election of the members
> of the board of directors and shall provide for
> the    efficient,    economical,    fair,    and    non-
> discriminatory administration of the Association.

You ask two related questions:   (1) is the plan a "rule" as defined by the APTRA; and (2) if it is a rule, is the plan a rule of the board or of the association?   In responding to your inquiry, we adhere strictly to the definition of "rule" as given in article 6252-13a, section 3(7), V.T.C.S.:

> (7)   'Rule' means any agency statement of general applicability that implements, interprets, or prescribes law or policy, or describes the procedure or practice requirements of an agency. The term includes the amendment or repeal of a prior rule but does not include statements concerning only the internal management or organization of any agency and not affecting private rights or procedures.

We conclude that the plan is not a rule of the association.   The APTRA defines a rule as an "agency statement."   Therefore, the plan cannot be a rule unless it is promulgated by a specific agency:   i.e., a body empowered by statute to promulgate rules.   Since article 21.49 of the Insurance Code does not empower the association to promulgate rules, the association is not a rulemaking body.   The association is only empowered to submit a proposed "plan."   All rule-making powers are reposed in the board.

The association is a statutorily mandated association of private insurance companies.   It operates on assessment fees collected from the member insurance companies; it receives no funds from the state. Although the association initially formulates the plan, the board is its ultimate overseer.   The board has full power to approve, disapprove, and amend the plan.   The association in no manner acts with the sanction of the state; rather, it must look to the board to enforce any provisions of the plan:   e.g., in the case of a member who refuses to pay his assessment fee.   Although the association was created by state statute, it is wholly controlled by the board, and it acts primarily as an advisory body to the board.

We conclude that the plan is a rule of the board.   The State Board of Insurance is unquestionably an agency.   For the following reasons, we conclude that the plan is the board's statement, and that it is a "statement of general applicability that implements, interprets, or prescribes law or policy. . . ."   V.T.C.S. art. 6252-13a, §3(7).

Section 5(d) of the act orders that

> [t]he proposed plan shall be reviewed by the Board and approved, unless it finds that such plan does not properly fulfill the purposes of this Act. . . .   If the Board approves the proposed plan, it shall certify such approval to the

> directors and the plan shall become effective 10
> days after such certification.

You have furnished us with copies of three board orders signed by all of the board members which document the board's approval of the plan. In our opinion, this approval constitutes the acceptance of the plan by the board as this agency's own statement within the meaning of article 6252-13a, section 3(7).

Having decided that the plan is an agency statement, we must now decide whether this statement satisfies the "general applicability" requirement of article 6252-13a, section 3(7). The plan is the main guide to the functions, powers and procedures of the association. It contains definitions which complement those given in the act, e.g., "net direct premiums." The plan provides a schedule of meetings for the association and a procedure for voting by the members. It also lists the qualifications required for election to the association's board of directors and details the election procedure. The plan outlines the power of the board of directors and describes the method of selection and duties of the officers. None of these provisions is contained in the act itself.

The plan elaborates upon the board's powers to enforce its provisions. It provides for the collection and investment of insurance premiums and for the assessment of fees from the members. The plan also supplies a formula for credit which the association will give to any member for insurance which it may write voluntarily; this feature is not included in the act. With regard to any association member's failure to pay its assessment fee, the plan gives the board the power to suspend that member's certificate of authority; this power is also not mentioned in the authorizing statute.

The plan of operation goes on to describe the insurance policies that the association may issue. Included in this section of the plan is a definition of "insurable property" that clarifies the definition provided in the statute (e.g., the plan's definition excludes mobile homes; see Attorney General Opinion H-824 (1976)). A limit on the amount of liability is also provided.

The method of application for insurance, acceptance, and rejection is described in detail in the plan of operation, as is the method of cancellation of a policy. Finally, the plan includes a detailed building code, which contains requirements to minimize windstorm damage. These procedures further implement the statute.

When the details of the plan of operation are compared with the general standards that determine whether something is a "rule," the inevitable conclusion is that the plan is a rule. The plan is of general applicability; it covers virtually all property insurers and all persons in a catastrophe area who may wish to obtain insurance from the association. Thus, the plan has a substantial impact on a

business group as well as on a large segment of the public. The plan implements, interprets, and prescribes both law and policy through its various mandatory provisions. The plan contains specific provisions that implement the general policy of the Insurance Code; it augments, rather than merely interprets, existing law; and, it has a significant external impact on the private rights of both the industry and the public.

You advise that if we should conclude that the plan is a rule, you will initiate rule making procedures under article 6252-13a, section (5), V.T.C.S. You express concern about enacting this rule before the onset of this year's hurricane season. We direct your attention to article 6252-13a, section (d) of the APTRA which provides for an emergency rule making procedure. The board should, however, begin standard rule making procedures as well since the emergency provisions have only a temporary effect.

## S U M M A R Y

The plan of operation of the Texas Catastrophe Property Insurance Association is a rule of the State Board of Insurance.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Colin Carl
Rick Gilpin
Yolanda McKeeman
Jim Moellinger
Nancy Sutton